THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL HARRIS, Defendant-Appellant.

First District (5th Division)   No. 1—88—3080

Opinion filed October 11, 1991.

Randolph N. Stone, Public Defender, of Chicago (Violet T. Ricks and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Michael Harris (Harris) was charged with attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4), aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)) and armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)). After a jury trial, he was found guilty of attempted murder, aggravated battery and armed robbery. Thereafter, defendant was sentenced to 58 years in the Illinois Department of Corrections to be followed by three years' mandatory supervised release.

On appeal Harris charges that the following procedural and substantive errors mandate a reversal of his conviction and vacation of his sentence:

(1) Whether the trial court erred by admitting evidence concerning a prior conviction for armed robbery;

(2) Whether the trial judge's interference in the manner in which defense counsel conducted his motion to suppress denied defendant a fair and impartial trial;

(3) Whether the trial judge erred by denying defense counsel's motion to suppress the identification of George Caver;

(4) Whether defendant was proven guilty of attempted murder, aggravated battery and armed robbery beyond a reasonable doubt; and

(5) Whether the 58-year sentence imposed by the trial judge is excessive and must be vacated.

The basic facts are as follows. On October 12, 1987, the victim, a Cook County department of corrections police officer, was driving home. Approximately eight blocks from her home she noticed a person driving a red Chevette pull up alongside of her. The red Chevette followed the victim until she arrived at her home. Upon her arrival home, the victim stopped her car alongside her garage and looked around. The victim got out of her car to open her garage door. As she exited her car she noticed the red Chevette parked close by. The victim reentered her car and then backed her car into her garage. Once parked in her garage she exited her car. The garage was illuminated by a streetlamp.

The victim saw a black male come into the garage. He pushed her against the car, told her not to look at him, and asked her whether she had any drugs or gold. While in her garage the officer was robbed at gunpoint, hit on her head and shot in the face. Her shoulder bag was pulled off her shoulder, two rings were taken from her finger and her badge was seized.

Once in her car, defendant pointed his gun at her face. The victim started her car. As she attempted to pull her car door shut, defendant shot her in the face. She was also hit over the head with the gun. With a gunshot wound in her face, she drove out of her garage. For a moment she noticed that defendant was alongside her car but then fell. When defendant got up he started running toward his red Chevette. The victim drove after him. Defendant shot again and hit the driver's side window of her car. The window shattered. The victim continued her pursuit of defendant until she could feel herself passing out. The victim later identified Harris from a lineup as the person who had accosted her.

On October 16, 1987, George Caver (Caver) was robbed while washing his 1978 green Oldsmobile. He was approached by a person he later identified as Harris. Harris identified himself as a policeman while showing a badge. Harris asked if Caver was the owner of the Oldsmobile and if he had any drugs in the car. Caver responded that he did not. Harris told Caver to empty his pockets onto the car's floor. At the time the keys to the Oldsmobile were in the ignition. Defendant then took Caver's car. Caver testified that a pair of cowboy boots and a pair of shoes were in the car when it was taken.

Later, Caver identified his cowboy boots, his Oldsmobile, his wallet and the badge that was later found in defendant's possession upon defendant's arrest. Caver identified defendant from a lineup. Caver also identified the shoes defendant was wearing in the lineup as his.

On October 18, 1987, at approximately 6 a.m., two Chicago police officers, Officer Arnold Martinez and Walter Smith, heard a high pitched squeal then observed a green Oldsmobile. After approaching the Oldsmobile and ordering the driver to pull over to the curb, the driver took off. The driver stopped and left the car with the officers in pursuit. Officer Carl Riggenbach later joined the chase. Officers Riggenbach, Martinez, and Smith observed defendant throw down a pistol and a badge that he was holding. Harris was eventually apprehended in a yard. A key chain, a leather glove, a black baseball cap and a wallet with Caver's identification were recovered in the backyard where Harris was arrested.

At approximately 6:30 p.m. on October 18, 1987, the victim went to the 111th Street police station accompanied by a friend, Mr. Gregory Lynum. Approximately one hour later she was taken to a lineup room where she identified Harris as the person who shot and robbed her. The victim also identified the gun used by defendant, her badge case containing her Cook County identification that had her identifying number, and the dark cap that defendant wore when he committed his crimes. Mr. Lynum gave the police a bullet he recovered from the victim's car. The bullet came from a cartridge of the same caliber of cartridge used in the gun recovered from defendant upon his arrest. However, the bullet was so mutilated that it could not be positively determined to have been fired from any particular gun.

Harris' version of the events is completely contradictory to the State's. Harris claims that at approximately 5 a.m. on October 17, 1987, he left his girl friend's house located at 78th and Carpenter. He was going to take a bus to his mother's home. He was between 63rd and 65th and Morgan with a cigarette in his mouth and marijuana in his pocket when he saw the police. As he ran to throw the marijuana away, the police pulled up, asked him for identification, told him to get into the car and placed him under arrest.

Harris stated that when he saw the police, he started running. He threw his cigarette to the ground, a bag of marijuana was on his person. He did not notice a 1978 Oldsmobile in the area. He did not throw a gun, wallet, sheriff's star or badge.

Despite Harris' claims of lack of involvement and excessive sentence, we must affirm his conviction and sentence.

# I

The first of Harris' five claimed errors involves a claim that the trial court erroneously denied his motion *in limine* to prohibit the introduction of a 1980 conviction for armed robbery. Harris argues that the probative value of the evidence is outweighed by its prejudicial effect. Harris further contends that his prior armed robbery conviction was so similar to his current armed robbery conviction that the admission of the prior armed robbery conviction was reversible error.

■ We disagree and find that the trial court zealously guarded Harris' rights in its ruling on the evidence concerning his prior conviction for armed robbery. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, establishes the basic circumstances under which the State may impeach a defendant with a prior conviction after he or she has testified. Specifically, a defendant may be impeached by evidence that he or she was previously convicted of a crime if that conviction was for a felony or involved dishonesty or false statement regardless of the punishment. (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.) The trial court, must, however, determine that the probative value of the evidence of the conviction is not outweighed by the danger of unfair prejudice. (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.) Further, evidence of a conviction under this rule is not admissible if a period of more than 10 years from the date of the conviction or release from confinement has elapsed. *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.

"Theft related offenses obviously involve dishonesty and arguably reflect on a person's likelihood of telling the truth when testifying as a witness." (*People v. Wright* (1977), 51 Ill. App. 3d 461, 463, 366 N.E.2d 1058.) In the present case, the initial prerequisites of *Montgomery* have been met, *i.e.*, the prior conviction for armed robbery involved dishonesty, and the conviction occurred within the 10 years preceding the crimes in the present case. Next, the trial court must determine whether "the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 587, 363 N.E.2d 805.

In *People v. Wright* (1991), 218 Ill. App. 3d 764, 773, the defendant was convicted of attempted burglary in October and November 1985, as well as in March 1986, for which he was sentenced to three years' imprisonment. The defendant was arrested again five months later. The trial judge in *Wright* denied defendant's motion to preclude the evidence of his prior convictions. In denying defendant's motion,

the trial judge stated that the evidence "goes to credibility" and that the court "must weigh prejudicial value as to the probative value."

In *People v. Poole* (1988), 167 Ill. App. 3d 7, 520 N.E.2d 1017, this court held that the trial court did not err in admitting the prior convictions for the limited purposes of impeachment where all of the *Montgomery* factors were satisfied. The court specifically stated:

> "(1) the convictions were for felonies, and robbery, like theft, is a crime involving dishonesty [citations]; (2) the convictions were within the 10-year time period authorized by our courts [citations]; and (3) one of the convictions (armed robbery) is for the same crime as [defendant] is charged with here, the other conviction for practically the same crime ***, but both of which involve moral turpitude." (*Poole*, 167 Ill. App. 3d at 16, 520 N.E.2d at 1022.)

A prior conviction for a crime which is similar to the crime charged does not mean that the prior conviction cannot be used against defendant for impeachment purposes; rather, the similarity is merely a factor which the court considers when balancing probative value against prejudicial impact. *People v. Hall* (1983), 117 Ill. App. 3d 788, 799-800, 453 N.E.2d 1327, 1337.

Here less than 10 years had elapsed since the prior conviction for armed robbery. After hearing arguments, the trial court made a ruling to insure that the evidence did not prejudice Harris in the eyes of the jury. The trial court's ruling gave the State an option to either tender evidence that Harris had been convicted of a prior felony and there would be no bar on comments during closing arguments or, in the alternative, the trial court would allow the State to put into evidence the fact that Harris' prior conviction was for armed robbery, in which case the State was barred from mentioning anything about the conviction during closing arguments. The State chose the latter course.

Defendant further argues that the jury was allowed to believe that because Harris had committed an armed robbery before, it was more likely that he committed the armed robbery in this case. Thus, the jurors viewed this evidence as propensity evidence, unfavorable to Harris. We disagree with defendant's contention.

During the State's rebuttal a certified copy of defendant's prior conviction was read to the jury. After the State rested, the trial judge stated:

> "The Court again cautions the jury that the testimony as you heard from the witness stand was offered only as rebuttal to specific evidence that you heard during the defense case.

It is not to be considered by you for any other purpose and, specifically, it is not to be considered as proof of commission of any other crime.

During the course of the final instructions, you will receive—I will again be referring to that in one of the instructions that I will give you. It is evidence only being offered for a limited purpose."

The trial court further admonished the jury by giving the jury the following instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.13 (2d ed. 1981)):

"Evidence of a defendant's previous conviction of an offense may be considered by you only insofar as it may affect his believability as a witness, and must not be considered by you as evidence of his guilt of the offense with which he is charged."

Harris states that evidence of his prior conviction was of little probative value to the State's case. Harris does not show how he was prejudiced by the evidence, nor does the record reflect prejudice. A trial court's decision to admit a prior conviction into evidence will not be overturned unless an abuse of discretion appears. (*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058.) With respect to prior offenses, however, that discretion is broad. (*People v. Spates* (1979), 77 Ill. 2d 193, 204-05, 395 N.E.2d 563, 569.) We find that the trial court did not abuse its discretion in balancing the relevant factors and denying defendant's motion to exclude his prior conviction. See *Wright*, 218 Ill. App. 3d at 774; *Hall*, 117 Ill. App. 3d at 800, 453 N.E.2d at 1337.

Rather than an abuse of discretion, the record reflects that the trial judge was extremely discreet in his ruling on the motion *in limine* to assure that the State's right to introduce the evidence as well as Harris' right to a trial free of prejudice were perfected. The trial court acted judiciously in limiting the uses of defendant's prior conviction and in cautioning the jury to only consider the evidence in terms of credibility. Harris' conviction was based on the identification of the victim, corroborative testimony by George Caver and the work of the Chicago police department, not because of the evidence that he was convicted of robbery in 1980.

## II

The second allegation of error that Harris makes is that the trial judge abused his discretion in controlling the way defense counsel conducted its motion to suppress the identification of the victim. Defendant contends that the trial judge intruded upon the function of

defense counsel by forcing her to present her motion to suppress identification in a certain manner. Defendant further alleges that by taking an active role in the proceedings, the judge set the tone for the trial, creating a burden on defense counsel to continually second-guess how the judge would rule or whether the judge would systematically scrutinize her manner of defending the case which resulted in a violation of Harris' right to a fair trial before an impartial judge.

It is well settled that an issue is waived for purposes of review unless there is a contemporaneous objection and the issue is raised in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124.) Moreover, if a defendant does not move for a substitution of judges upon an allegation of the judge's predisposition against him, he has waived consideration of the issue. (Ill. Rev. Stat. 1989, ch. 38, par. 114—5; see also *People v. Curtiss* (1984), 126 Ill. App. 3d 568, 572-73, 467 N.E.2d 624.) Additionally, if a defendant acquiesces to a procedure that is not objected to, this acquiescence will preclude a reviewing court from considering the basis of objection. *People v. McTush* (1980), 81 Ill. 2d 513, 520-21, 410 N.E.2d 861.

Defendant voluntarily participated in the trial court's proposed lineup procedure. Although defendant never moved for a substitution of judges and we consider the issue waived, we nevertheless address the issue because of the almost constant implication by defense counsel that a trial judge has abused his discretion in jury cases in an attempt to assure a fair trial.

Defendant contends that the victim confronted him immediately prior to the lineup where he was identified by the victim. Defendant's mother and sister were present just prior to the lineup when the alleged confrontation occurred. In this case, during its motion to suppress identification, defense counsel requested that her witnesses view the victim while she was sitting in the jury room. The trial judge required defense counsel to get four other women to be of the same age, size, and similar characteristics as the correctional officer. The witnesses would view such a lineup to identify the correctional officer. This is the procedure that was followed and by which Harris claims the judge exceeded his judicial authority.

The following are pertinent excerpts of the discussion between defense counsel and the trial judge:

> "MS. KEISMAN: No, judge, all I ask is that when [the victim] was sitting in the jury room that my witnesses be allowed to look at her. I mean, my other alternative, Judge was to take them to [the victim's] house.

THE COURT: Tell you what I will do. You have—you can get four other people who appear to be approximately the same age and size and characteristics, other characteristics, as [the victim] and I will permit a lineup to be conducted. And then you may have your witnesses view that lineup to determine whether they can identify [the victim] and that can be done under the auspices of having a neutral deputy sheriff present at that time.

\* \* \*

THE COURT: Now, if you don't wish to avail yourself of that opportunity to have your witnesses look at her fine. You were the one who raised it, you were the one who asked for it and if you want to withdraw that request that is your prerogative.

MS. KEISMAN: No, Judge, I want my witnesses to look at [the victim], I have made that clear. And as I made clear if you wish to not believe them then that is your prerogative but we have the right to proceed with our motion in the way that we wish to proceed. I don't know why I must be foreclosed from bringing [the victim] into court. Why I have to not proceed by way of lineup. That is not the tactic that I wish to proceed.

I need the witnesses to look at [the victim] so they can say, yes, she was the woman we saw in the police station so that I may sustain my burden or they may say no. And if they say no, Judge, then as I said that's my problem.

\* \* \*

THE COURT: Okay, fine. Well, when I suggested it earlier I thought that it met with both of your approvals and there was no objection to it interposed.

If you are now objecting to that procedure, Ms. Keisman, that is your prerogative, you can object to it and we won't have one.

MS. KEISMAN: Judge, am I allowed to bring [the victim] into court so that my witnesses can view her?

THE COURT: I will tell you that if you proceed in that manner I probably will give them absolutely very little credibility to their testimony. So, you take a chance. It's a real choice you're making.

\* \* \*

MS. KEISMAN: Well, Judge, given the Court's indication of how you would rule then I feel that I'm forced to participate in a lineup.

THE COURT: Don't feel forced at all. It is up to you. It is a trial tactic. You can determine which you prefer to do. If your witnesses identify the correct person, well, obviously it will have a great deal of weight. If they do not identify the correct person, well, that speaks for itself.

MS. KEISMAN: I told you at the beginning that I would like to do the case as I prefer and then the Court indicated to me that you would doubt their credibility if I did it the way I prefer. Now I am forced to do it with a lineup.

THE COURT: No, you are not forced, Ms. Keisman. I said that would have very little weight.

MS. KEISMAN: Okay, thank you.

THE COURT: Just for exactly the same reason that this Court often finds people not guilty on a single finger identification where there hasn't been a lineup."

The preceding discussion took place at the pretrial motion to suppress outside the province of the jury. The lineup consisting of four women took place outside of the courtroom in the jury room in the presence of a neutral observer. The lineup itself was conducted off the record. Defendant's mother and sister did not conclusively and positively identify the victim in the lineup.

A defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt concerning his guilt. (*People v. Mosley* (1979), 68 Ill. App. 3d 721, 726-27, 386 N.E.2d 545.) However, "[q]uestions relating to the character of the evidence offered and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse resulting in prejudice to the defendant." (*People v. Skidmore* (1966), 69 Ill. App. 2d 483, 488, 217 N.E.2d 431; see also *People v. Calloway* (1979), 79 Ill. App. 3d 668, 673, 398 N.E.2d 917.) "[A] court is given considerable discretionary latitude in the orderly procedure of a trial, and the exercise of that discretion should not be disturbed unless a clear abuse is shown." (*People v. Garrett* (1973), 11 Ill. App. 3d 142, 146, 296 N.E.2d 44.) It is the trial judge who presides at a jury trial in a criminal case, not a State's Attorney or defense counsel.

The trial judge's duty is to exercise a high degree of care to avoid influencing the jurors. He must remain impartial and refrain from displaying prejudice or favor to any of the parties. (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 189 N.E.2d 295.) A strong presumption exists that judges rely only on proper evidence in reaching determinations of the merits. (*People v. Beasley* (1982), 108 Ill. App. 3d 301, 309, 438

N.E.2d 1305.) Even the fact that a judge has ruled adversely to a defendant on a previous occasion does not necessarily disqualify the judge from later sitting in judgment of the same defendant's claims. See *People v. Vance* (1979), 76 Ill. 2d 171, 178, 390 N.E.2d 867; *People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649.

■ There is nothing in the trial judge's actions during the motion to suppress that indicates a hostility to either defense counsel or the accused. There is nothing to suggest that his action was prejudicial to the defendant or in favor of the prosecution. The trial court did not preclude defense counsel from proceeding in the manner in which she preferred, but rather the trial judge merely indicated that he felt one procedure was worthy of greater weight than the other. The trial judge indicated that identification testimony where the witnesses had the opportunity to view but one individual and subsequently identify that single individual as the victim was not worthy of as much weight as a procedure where the witnesses identified the victim from a lineup of four women.

### III

■ The third issue Harris raises is whether the trial court erred by denying defense counsel's motion to suppress the identification of State witness George Caver. Allegedly Caver was told by the police that they had arrested the person who had taken his car. Harris argues that the suggestive procedures used for identification in the case at bar denied Harris due process of law. This claim is based on the charge that Caver's identification of Harris was not an "informed judgment," that there was a discrepancy between the person Caver chose from the lineup and the description that he gave police of the person who took his car, as well as alleged outside influences on the identification.

Defendant alleges that the procedure used in the identification lineup was suggestive. Specifically, defendant alleges that Caver was told by the police that they had arrested the person who had taken his car and that, for 45 minutes, Caver was put in a room with other people who were there to identify a rapist.

For the following reasons, we reject Harris' argument that his conviction merits a reversal as a result of the trial court's denial of his motion to suppress. Defendant argues that there is a discrepancy between the person Caver chose from the lineup and the description that he gave the police of the person who took his car. Caver's description of the offender stated that he was a black male, 26 to 28 years old, 5 feet 7 inches to 5 feet 10 inches tall and weighed 135 to

145 pounds. At the time of the identification, Harris was 6 feet tall and weighed approximately 200 pounds. The mere fact that a witness fails to note a particular characteristic or minor discrepancies exist in a witness' description does not render that identification unreliable and vague. *People v. Nightengale* (1988), 168 Ill. App. 3d 968, 973, 523 N.E.2d 136, 140.

Caver testified that he did not see defendant immediately prior to the lineup. He further testified that he did not see defendant or converse with anyone immediately prior to the lineup who could have aided him in his identification of defendant. Caver did testify that he had a conversation with two people immediately prior to defendant's lineup in a waiting room; however, this conversation concerned an unrelated rape.

A trial court's denial of a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898.) Manifestly erroneous or "against the manifest weight of the evidence" is commonly understood to mean "palpably erroneous and wholly unwarranted" (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530) or "appears to be arbitrary, unreasonable, and not based upon the evidence." *Martin v. Zucker* (1985), 133 Ill. App. 3d 982, 991, 479 N.E.2d 1000.

In ruling on defendant's motion to suppress the lineup, the trial court found:

> "Based upon the evidence, the Court finds there is not evidence of any tainted line-up. The witness testified that he never saw the defendant prior to the lineup. I believe the witness' testimony. The line-up photo which I observed appears to be an appropriate line-up photograph.
>
> The Court finds absolutely no irregularities in the line-up. Your motion is denied."

At the hearing, the initial burden is on the defendant to establish that within the totality of the circumstances, the pretrial identification was so unnecessarily suggestive that it gave rise to a substantial likelihood of irreparable mistaken identification. (*Stovall v. Denno* (1967), 388 U.S. 293, 301-02, 18 L. Ed. 2d 1199, 1206-07, 87 S. Ct. 1967, 1972-73; *People v. Jackson* (1974), 24 Ill. App. 3d 700, 704, 321 N.E.2d 420, 423.) However, even if the pretrial identification is found to be improper, an in-court identification by the witness may still be allowed, provided the State establishes by clear and convincing evidence that his identification is based on observation independent of

and prior to the tainted out-of-court identification. *People v. Jackson* (1974), 24 Ill. App. 3d 700, 704, 321 N.E.2d 420, 423.

If pretrial lineup procedures are defective a conviction is not overturned, if as in this case, an in-court identification of the defendant is positive and based on personal observation of a defendant while defendant committed his crime, and it was not tainted by the lineup procedure. (*People v. Guyton* (1969), 114 Ill. App. 2d 394, 252 N.E.2d 665.) A defendant's conviction can be sustained despite a pretrial confrontation between the victim or victims and the felon if the confrontation was harmless beyond a reasonable doubt. (*People v. Flemming* (1977), 47 Ill. App. 3d 755, 362 N.E.2d 691 (showup confrontation held at the scene of the arrest).) The test is whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the suspect was denied due process of law. *People v. Flemming* (1977), 47 Ill. App. 3d 755, 760, 362 N.E.2d 691.

■ Defendant argues that he was substantially prejudiced by the trial court's allowance of Caver's identification testimony in that the jury was allowed to hear other crime evidence that showed defendant had a propensity for crime. Finally defendant argues "[a]ll of this other crimes evidence allowed the jury to believe 'where there is smoke there is fire' and convicted [Harris] on matters other than the facts in this case." We note that prior to Caver's testimony the judge admonished the jury in the following manner:

> "Ladies and gentlemen, the next testimony you will hear will be evidence presented by the State in what is called rebuttal.
>
> Now, I want to caution you. You are not [to] consider any of this evidence as being any evidence of the commission of any crime.
>
> But rather, it is offered only, and is to be considered by you only, for the purpose that it is intended by the State; to be offered as a rebuttal of specific testimony which you heard during the Defense case.
>
> You are to consider it only as an offer of rebuttal of testimony that you heard during the Defense case, and not as proof of any other type of offense."

Harris testified that he was never in possession of the green Oldsmobile, Caver's wallet with his identification or the victim's badge. Caver's testimony directly contradicted the defendant's. "A trial is an adversary proceeding. The State [has] the right and obligation to use all of the impeaching evidence it [possesses] in order to destroy the credibility of the defendant if he were to testify." (*People v. McKibbins* (1983), 96 Ill. 2d 176, 189, 449 N.E.2d 821, 827.) Furthermore, a

trial court's determination to admit other crimes evidence will not be reversed unless there exists a clear abuse of discretion. (*People v. Funches* (1978), 59 Ill. App. 3d 71, 73, 375 N.E.2d 135.) We do not find that the judge abused his discretion in allowing the jury to hear Caver's testimony. Moreover, the trial court acted cautiously in admonishing the jury to consider Caver's testimony for the limited purpose of rebuttal.

In this case, defendant's possession of the two victims' personal effects, and the police chase, ending in recovery of those items at the scene of his arrest, would have been adequate to sustain the conviction. Considering the overwhelming nature of independent corroborative evidence, we do not believe any improper lineup procedure contributed to conviction. Further, as stated previously, we believe that Harris was convicted on the basis of testimony and evidence presented as to these crimes, not on the basis of any matters other than the facts in this case.

## IV

In his fourth point, Harris argues that the State failed to prove him guilty of attempted murder, aggravated battery and armed robbery beyond a reasonable doubt. Harris claims the testimony of the correctional officer lacked credibility, was uncertain and insufficient and therefore defendant's conviction must be reversed. Defendant argues that the victim did not give a detailed description of her offender. He points out that she did not describe the length of his hair, whether he had facial hair, whether there were any scars on his face or the shape of his face. Defendant maintains that the identification evidence was unconvincing and insufficient to produce an abiding conviction beyond a reasonable doubt that Harris was the assailant.

In support of his position defendant cites to the dissent in *People v. Nims* (1986), 156 Ill. App. 3d 115, 505 N.E.2d 670; however, we find the principles and reasoning set forth in the majority opinion and special concurrence to be more persuasive. It is well established that a positive identification of a single witness is sufficient to support a conviction, provided that the witness is credible and observed the offender under conditions which would permit a positive identification to be made. (*People v. Nims* (1986), 156 Ill. App. 3d 115, 505 N.E.2d 670; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615-18, 378 N.E.2d 1318.) Discrepancies or omissions in detail do not destroy the validity of an identification, but rather affect the weight of the testimony and are to be evaluated by the trier of fact. (*People v. Nims* (1986), 156 Ill. App. 3d 115, 505 N.E.2d 670; *People v. Shelby* (1984),

123 Ill. App. 3d 153, 462 N.E.2d 761.) With regard to identification testimony, it has been noted that "untrained persons may give varying descriptions of another."

The only other case defendant cites in support of this argument is *People v. Poltrock* (1974), 18 Ill. App. 3d 847, 850, 310 N.E.2d 770. We find the facts in *Poltrock* distinguishable from the present case. In that case the testimony of the three complainants differed markedly. The appellate court found that the cumulative effect of the contradictions within and between the three stories raised a reasonable doubt of defendant's guilt. In the present case there were no conflicts in the testimony and evidence in the State's case.

"The purpose of a jury is to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor." (*People v. Boclair* (1989), 129 Ill. 2d 458, 474, 544 N.E.2d 715, citing *Taylor v. Louisiana* (1975), 419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 698.) The testimony of a single witness, when positive and credible, is sufficient to support a conviction provided that the accused is observed under circumstances which would allow a positive identification to be made. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.) This is true even though the testimony of that witness is contradicted by the defendant's testimony, or there are alibi witnesses testifying for him. (*People v. Alexander* (1978), 65 Ill. App. 3d 559, 563-64, 382 N.E.2d 519.) It is the jury's duty to assess the credibility of witnesses and to weigh the evidence in determining a defendant's guilt or innocence. (*People v. Byron* (1987), 116 Ill. 2d 81, 90, 506 N.E.2d 1247.) Any discrepancies or conflicts in the testimony affect only the weight to be given the testimony, and the trier of fact is free to accept or reject as much or as little as it pleases of a witness' testimony. *People v. Beasley* (1977), 54 Ill. App. 3d 109, 114, 369 N.E.2d 260.

A jury determination in a criminal trial is entitled to great deference; a court reviewing a challenge to the sufficiency of the evidence will defer to the jury and will not retry the defendant. (*People v. Boclair* (1989), 129 Ill. 2d 458, 544 N.E.2d 715.) On review, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis in original.)' " (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Moreover, a reviewing court will not set aside a jury's verdict unless an examination of the evidence demonstrates that it is so improbable, unsatis-

factory or inconclusive so as to raise reasonable doubt of quilt. *People v. Williams* (1989), 185 Ill. App. 3d 1040, 1045, 542 N.E.2d 93.

■ Judged by this rule, this court cannot conclude that defendant's conviction for the various offenses is at all doubtful. As a matter of fact the evidence is strong that Harris shot the correctional officer in the face, robbed her and in the following days robbed Caver. His defense that he was misidentified by the two victims and that the police got the wrong person after the chase, as well as the fact that the badge and personal effects found at the scene of the arrest were not his, did not convince either the trial court or jury. Based upon the evidence, the jury found defendant guilty beyond a reasonable doubt. Based upon a careful review of the record with the cited rules guiding this court, we must affirm the jury's findings.

## V

Finally, Harris argues that the 58-year extended-term sentence imposed by the trial court is excessive and should be vacated. Although severe, the term is within the limits prescribed by the legislature.

The determination and imposition of sentence are within the circuit court's discretion, and a reviewing court may not substitute its judgment for that of the trial court absent an abuse of that discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) A reasoned judgment as to the proper sentence to be imposed must be based upon the particular facts and circumstances of each individual case. Such a judgment depends upon many factors, including the gravity of the offense and the circumstances of commission; the court also considers the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age and criminal history. (*People v. Williams* (1991), 209 Ill. App. 3d 709, 568 N.E.2d 388; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial judge presides over the sentencing hearing and is in the best position to evaluate these criteria and determine the proper sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Sentencing is a matter of judicial discretion. In the absence of an abuse of that discretion, the court cannot alter the sentence on appeal. *People v. Younger* (1986), 112 Ill. 2d 422, 494 N.E.2d 145.

■ In determining what sentence to impose, the court looks at several criteria, including the nature of the crime, the need to protect society, and the rehabilitative potential of the defendant. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Watson*

(1982), 107 Ill. App. 3d 691, 697, 438 N.E.2d 453.) Harris' mother testified that he did not complete high school and that he had worked for a trucking company from the age of 11 years to the age of 21 years. Defendant argues that this verifies his potential for rehabilitation.

Defendant had two prior convictions. The crimes he committed in this case were severe. Merely because this court may feel a lesser sentence would be more just is no reason to reverse. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The record reflects that the trial court considered proper criteria in sentencing defendant, and defendant has presented no persuasive reasons why we should overrule the discretionary ruling of the circuit court.

The sentence Harris received is severe, but within the statutory limits. Nothing in the record discloses that the trial judge abused his discretion in sentencing, and based on the record in this case, nothing in the law authorizes this court to reverse the trial judge in this case. We conclude that the trial court did consider all of the relevant factors and, therefore, its sentencing determination was proper and was not an abuse of discretion.

For all the reasons set forth above, we affirm the conviction and sentence imposed by the trial court.

Judgment affirmed.

GORDON and McNULTY, JJ., concur.