STATE of Utah, Plaintiff and Appellee,

v.

Richard M. GURULE, Defendant and Appellant.

No. 920099–CA.

Court of Appeals of Utah.

July 2, 1993.

Joan C. Watt and Patrick L. Anderson, Salt Lake City, for defendant and appellant.

Jan Graham and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and RUSSON, JJ.

---

## OPINION

RUSSON, Associate Presiding Judge:

Richard M. Gurule appeals the trial court's order denying his motion to suppress pre-seizure eyewitness identification evidence. We affirm.

## FACTS

On the evening of May 4, 1990, the Knowlden family, Dale Haddenham, and other friends were having a small party at the Knowlden home when a group of strangers entered the house and announced, "We are here to party or trash the place; it's your choice." Following a brief exchange of unpleasantries, the intruders suddenly retreated. Dale Haddenham, Rodney Knowlden, and Eddy Knowlden pursued the intruders and Jody Knowlden paused to assist Dorothy Knowlden, who had been knocked down by the fleeing intruders. Rodney Knowlden was closely following Haddenham when he saw a man step from behind a truck parked in the Knowlden driveway and hit Haddenham in the head with a baseball bat, knocking him "clear off his feet" and breaking the bat. Eddie Knowlden, who was temporarily distracted by another stranger, also noticed "something flying through the air," and saw someone holding what appeared to be a baseball bat handle.

When West Valley City Police Officers responded to the disturbance at the Knowlden home, they heard witnesses shout that the person who might be responsible for the aggravated assault had run into the home located at 2561 Starling Avenue, Gurule's residence. Without any further investigation, the officers proceeded to Gurule's home, pounded on the door, and despite Mrs. Gurule's resistance, entered the home. The officers seized Gurule, escorted him outside and forced him to appear in a "show-up" procedure where he was viewed by witnesses to the assault.

Gurule was subsequently charged with aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1990). Gurule moved to suppress (1) statements of witnesses relating to their identification of him at trial, on the ground that the identification procedure employed by the police officers violated his rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Utah Constitution; and (2) all evidence acquired subsequent to, and as a result of the illegal entry into Gurule's home, on the ground that such was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and article I, section 14 of the Utah Constitution.

Following a hearing, the trial court determined:

1. That entry into the Gurule home on May 5, 1990, was in violation of the defendant's rights under the Fourth Amendment of the United States Constitution and Art. I, § 14 of the Utah State Constitution in that the entry to the house was made in the absence of exigent circumstances and without a warrant, which easily could have been obtained by telephone or other means.

2. That the illegal entry and subsequent seizure of the defendant requires that all evidence acquired as a result of that illegal entry and seizure must be ordered suppressed.

3. That the failure of the West Valley Police Department to accurately record the initial descriptions given by the eyewitnesses, and the results of the "show-up" conducted in this case along with the suggestive circumstances of the "show-up" itself requires suppression under the guidelines articulated in *State v. Ramirez,* supra, Art. I, § 7, Utah State Constitution.

The State filed objections to the court's proposed findings of fact, conclusions of law and order, claiming that pre-seizure identification evidence should not be included in the suppression order. Following a hearing on the matter, the court ruled: "I will make it as clear as I can on the record that I have no intention of suppressing any evidence, identification evidence, based on events that occurred prior to the search."

After receiving memoranda from both parties relating to the admissibility of pre-seizure identification evidence, the trial court entered supplemental findings of fact, conclusions of law, and an order stating:

> That the eyewitness identification evidence obtained prior to the illegal search and seizure may properly be offered and admitted if otherwise competent, and is not to be suppressed as part of the Court's prior order dated May 8, 1991.

Gurule then filed this interlocutory appeal of the court's order denying suppression of the pre-seizure identification evidence.

## STANDARD OF REVIEW

"We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard. We review the trial court's conclusions of law based on these facts under a correctness standard." *State v. Brown*, 853 P.2d 851, 854–55 (Utah 1992) (citing *State v. Ramirez*, 817 P.2d 774, 781–82 (Utah 1991)).

## ANALYSIS

Gurule claims that the trial court improperly excluded pre-seizure identification evidence from its suppression order. Specifically, he argues that such evidence was so tainted by the suggestive show-up that admission of that evidence would violate his due process rights. The State responds that the trial court properly excluded pre-seizure identification evidence from the suppression order, claiming that such evidence is based on observations independent of the subsequent police misconduct and is, therefore, admissible at trial.

Inasmuch as the trial court determined that the police show-up was impermissibly suggestive and since such determination is not challenged on appeal, the sole inquiry here is whether the eyewitness identification prior to the show-up may properly be offered and admitted at trial. *See State v. Thamer*, 777 P.2d 432, 435 (Utah 1989).

In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States Supreme Court reasoned that despite the illegality of a police lineup, in-court identification evidence should not be excluded "without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications [are] based upon observations of the suspect other than the lineup identification." *Id.*, 388 U.S. at 240, 87 S.Ct. at 1939 (citation omitted). The Court explained that "[w]here, as here, the admissibility of evidence of the lineup identification itself is not involved, a per se rule of exclusion of courtroom identification would be unjustified." *Id.* (citation and footnote omitted). Accordingly, under *Wade*, even if an identification procedure is found to be illegal, in-court identification is still admissible if it can be established that there was an independent basis for such identification. *See id.*, 388 U.S. at 240–42, 87 S.Ct. at 1939–40; *see generally Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Utah courts have also embraced the independent basis test. In *Thamer*, the defendant claimed that showing mug shots to the victim following the crime tainted her identification of him at the preliminary hearing and her in-court identification of him at trial. The Utah Supreme Court disagreed, ruling that "[t]he in-court identification was independent of the photographs and, under the totality of the circumstances, was reliable." *Thamer*, 777 P.2d at 436 (citations omitted). *See also State v. Wulffenstein*, 657 P.2d 289, 292 (Utah 1982) (holding that victims' in-court identification was sufficient for the jury to find that such identification was based upon an independent recollection of encounter with assailant that was uninfluenced by pretrial identifications), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); *State v. Malmrose*, 649 P.2d 56, 59 (Utah 1982) (upholding trial court's order suppressing the illegal lineup, but allowing identification at trial since such identification was independent of suggestive influences), *rev'd on other grounds, State v. Long*, 721 P.2d 483, 487 (Utah 1986); *State*

*v. Wettstein,* 28 Utah 2d 295, 501 P.2d 1084, 1086 (1972) (holding that substantial competent evidence existed to support trial court's determination that identification testimony had a source independent of the suppressed illegal lineup); *State v. Drawn,* 791 P.2d 890, 892 (Utah App.) (holding that an adequate independent basis for in-court identification of defendant existed despite defendant's possibly suggestive presence at counsel table), *cert. denied,* 804 P.2d 1232 (Utah 1990); *State v. Pacheco,* 778 P.2d 26, 28–29 (Utah App.1989) (holding that while the possibility of suggestive influences existed, in-court identification was based on independent factors).

Other jurisdictions have also addressed this issue. In a case nearly identical to the one before us, *State v. Lopez,* 99 Or.App. 381, 782 P.2d 175 (1989), police officers entered a residence without a warrant and forced the defendant out of the house into the street, where the victim identified him as one of the persons involved in an attempted theft. On appeal, the State conceded that the show-up identification should be suppressed, but argued the suppression order should not bar an in-court identification. The Oregon Court of Appeals held that "the suppression order should not bar an in-court identification, if the victim can identify defendant at retrial and the state can show that the in-court identification has a source independent of the show-up identification." *Id.,* 782 P.2d at 176 (citation omitted); *see also State v. Franklin,* 41 Wash.App. 409, 704 P.2d 666, 672 (1985) (holding that suppression of an in-custody identification as the fruit of an unlawful arrest does not require suppression of observations made prior to the unlawful arrest).

Similarly, in *Hays v. State,* 617 P.2d 223 (Okla.Crim.App.1980), the Oklahoma Court of Criminal Appeals held:

> Improper suggestiveness in a confrontation does not conclusively indicate, however, that the subsequent in-court identification was unreliable, thereby requiring exclusion of the testimony at trial.
>
> . . . .

If, under the "totality of circumstances" test ... it can be determined that a witness' in-court identification of the defendant is entirely based upon observations at the time of the incident, the testimony can be properly admitted.

*Id.* at 229 (citations omitted); *see also Moye v. State,* 122 Ga.App. 14, 176 S.E.2d 180, 183 (1970) (holding that even if pre-trial identification is tainted, in-court identification is permissible if it has an independent origin); *People v. Harris,* 220 Ill.App.3d 848, 163 Ill.Dec. 1, 9, 580 N.E.2d 1342, 1350 (1991) (holding that in-court identification may still be allowed if based on observation independent of and prior to the tainted out-of-court identification), *appeal denied,* 143 Ill.2d 643, 167 Ill.Dec. 404, 587 N.E.2d 1019 (Ill.1992); *Remsen v. State,* 428 N.E.2d 241, 243 (Ind.1981) (holding that in-court identification is permissible if the State establishes by clear and convincing evidence that a basis exists for the witness's in-court identification that is independent of the unconstitutional confrontation); *State v. James,* 592 So.2d 867, 870 (La.App.1991) (holding that tainted pretrial identification does not render subsequent in-court identification inadmissible if the in-court identification has an independent basis); *People v. Smalls,* 112 A.D.2d 173, 490 N.Y.S.2d 851, 853 (N.Y.App.Div.1985) (holding that if an identification is the product of a suggestive show-up, witness may nonetheless identify the defendant in court if such identification is based on an independent source); *Hill v. Commonwealth,* 2 Va.App. 683, 347 S.E.2d 913, 918 (1986) (holding that even if an out-of-court identification is found to be unduly suggestive, an in-court identification may still be made if such is shown to have an independent origin).

In the case at bar, the trial court, in excluding the pre-seizure eyewitness identification evidence from the suppression order, stated that "eyewitness identification evidence obtained prior to the illegal search and seizure may properly be offered and admitted if otherwise competent, and is not to be suppressed as part of the Court's prior order dated May 8, 1991." Because the said order merely allows the State the opportunity to establish by clear and con-

vincing evidence that the pre-seizure identification is based upon observations of the suspect independent of the suggestive show-up, *see Wade*, 388 U.S. at 240, 87 S.Ct. at 1939, the trial court's order excluding such evidence from the suppression order was proper.

## CONCLUSION

The trial court properly denied Gurule's motion to suppress pre-seizure eyewitness identification evidence. Accordingly, we affirm.

BENCH and GREENWOOD, JJ., concur.