THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEPHEN R. CURTISS, Defendant-Appellant.

Fourth District No. 4—83—0842

Opinion filed August 10, 1984.

Daniel D. Yuhas and John J. Hanlan, both of State's Appellate Defenders

Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and Linda Welge, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

After a jury trial, the defendant was found guilty of residential burglary (theft), residential burglary (felony arson), and arson (Ill. Rev. Stat. 1981, ch. 38, pars. 19—3, 20—1). Judgment was entered on the residential burglary (theft) and arson counts. Defendant was sentenced to concurrent terms, 15 years for residential burglary and an extended term of 14 years for arson. He appeals from the judgment of the circuit court of Livingston County. We affirm.

Defendant raises four issues on appeal: (1) whether he was denied a fair trial because his case was not transferred to a judge outside the 11th judicial circuit; (2) whether he was proved guilty beyond a reasonable doubt of arson; and (3) whether the trial judge abused his discretion in sentencing the defendant to an extended term of 14 years for arson by failing to consider defendant's low level involvement in the offense—particularly where codefendant Turner was charged with but not prosecuted for the arson—and his youthful age; and (4) in sentencing defendant to 15 years for residential burglary by using the damages caused by the arson to aggravate the sentence for both that offense and the residential burglary, thereby punishing him twice for the same offense in violation of the double jeopardy clause of the constitution.

As the parties are familiar with the facts of this cause, they are referred to herein only to the extent necessary to this disposition. The evidence adduced at trial tended to show that on or about March 13, 1983, defendant Curtiss and codefendant Turner (not party to this appeal) entered the residence of Jerome Pearre, which was then consumed by fire that same date. The Pearres are the mother- and father-in-law of Judge Glennon, a circuit judge of the 11th judicial circuit. According to the presentencing report and trial evidence, financial losses resulting from the fire were as follows: $171,000 (dwelling), $5,375 (cost of demolition), $120,000 (contents, books), and $12,000 (silver). The victims' losses not covered by insurance were $53,500 (dwelling), $66,500 (contents), and $11,000 (silver).

Before trial, defendant filed a motion for substitution for Livingston County Judge William Caisley, alleged to be a friend of Judge Glennon. The motion was heard and allowed by Livingston County

Judge Frank, who sent the matter back to chief circuit Judge McCullough for reassignment. Judge Frank's letter to Judge McCullough mentioned by postscript that defendant's counsel had requested that the case be assigned to a judge outside the 11th judicial circuit. The matter was set for and heard by Judge William Roberts of the 11th judicial circuit.

Defendant testified at trial that on the night of March 12, 1983, he and codefendant Turner embarked upon a night's drinking, going to several bars and consuming shots of bourbon and peppermint schnapps with beer chasers. After the bar closed, defendant and Turner proceeded to a 24-hour grocery to purchase beer in addition to the four cans they had. They were unable to buy the beer because it was after 1 a.m. They purchased some cigarettes and hung around the store until an employee called the police to assist them in leaving the premises. Defendant and Turner walked over to a nearby garage, owned by the Pearres, and sat down to drink a beer and watch the police. They then realized that there was no car in the garage and went to the front of the house where they discovered newspapers laying on the porch. They decided to break in. Once inside, they forced the lock on a door in the kitchen and removed the victims' silver in pillow cases. They discovered cases of liquor in the basement and placed three outside the basement door with the silver. They also removed a television and stereo components. They began relocating items placed at the basement door to an alley about a block away. Defendant recovered his cigarettes and lighter, stashed beneath a birdbath near the Pearres' house, so as not to lose them if he had to make a speedy escape. According to defendant's testimony, Turner told him he was going to set the house on fire to get rid of evidence of the burglary. Defendant told Turner not to do that and then took leave of him, going to dump his gloves into a nearby Salvation Army donation box. As he turned back toward the house, he saw Turner running and the house afire. He retired with Turner to a friend's house, where they slept.

Defendant acknowledged that when questioned by the police on March 13, 1983, he had denied knowledge of the fire or a silver watch, stolen from the residence and recovered by the police. Defendant and his cohorts thereupon proceeded to pawn the silver at various places in Illinois and Iowa. With the funds so gained, they flew to Virginia and then went to Florida, where they ran out of money. They committed another burglary and were apprehended. Defendant then spoke to Illinois authorities by telephone and admitted burglarizing the Pearre residence but denied setting the fire.

Several witnesses testified in defendant's behalf that, during incarceration with codefendant Turner, Turner told them something to the effect that he had burned the house of a judge or a judge's relatives. One of the witnesses acknowledged that after he became more acquainted with Turner, Turner told him that defendant had actually set the fire.

■ Defendant first argues that he was deprived of a fair trial because his request that the case be transferred to a judge outside the 11th judicial circuit was not honored. Defendant's motion for substitution of judge was heard and granted as an automatic substitution within 10 days of assignment. Defendant thereafter proceeded to trial before Judge Roberts. He now argues that the failure to honor his "request" constitutes reversible error.

Section 114—5 of the Code of Criminal Procedure of 1963 provides in pertinent part:

> "Substitution of Judge. (a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; ***
> ***
>
> (c) In addition to the provisions of subsections (a) *** of this Section any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes. If the motion is allowed, the case shall be assigned to a judge not named in the motion. If the motion is denied the case shall be assigned back to the judge named in the motion." (Ill. Rev. Stat. 1981, ch. 38, par. 114—5.)

In examining the record, we find no motion or affidavit as to the prejudice of any judge but Judge Caisley. If any record was made of the hearing of September 19, 1983, on defendant's motion for substitution of a judge, it has not been made part of the record on appeal. Neither has the defendant provided a bystander's report of the hearing as provided by Supreme Court Rule 323(c) (87 Ill. 2d R. 323(c)). We are

therefore unable to determine whether the "request" was supported by specific allegations of prejudice as to each judge in the circuit—as opposed to a general allegation of prejudice (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750)—or whether the prosecutor had opportunity to address such a request. It is the duty of the appellant to insure a sufficient record of proceedings so as to show any error on which he wishes to appeal. We note that a previous defense motion for substitution of judge had been heard by Judge Caisley on September 1, 1983, whereupon defendant inquired whether Judge Roberts had been hearing some cases and was advised that the chief judge had assigned Judge Roberts cases when a motion for substitution had been granted. Further, as defendant was willing to proceed to trial before Judge Roberts, we may regard this issue as waived. (*People v. Bach* (1979), 74 Ill. App. 3d 893, 393 N.E.2d 563.) In any event, upon our reading of the record we conclude that defendant received a fair and impartial trial.

 Defendant next urges that he was not proved guilty beyond a reasonable doubt of arson—on a theory that the arson was an offense separate and distinct from the burglary in which he was involved—and that he had sufficiently withdrawn from that offense so as to preclude his conviction under a theory of accountability.

The arson appears to have been in furtherance of the burglary, to which defendant concedes common design with Turner, and directed at preventing its discovery. Section 5—2 of the Criminal Code of 1961 provides in pertinent part:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. However, a person is not so accountable *** if:
>
> * * *
>
> > (3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."

(Ill. Rev. Stat. 1981, ch. 38, par. 5—2.)

Generally, a defendant may be held liable for the commission of acts in furtherance of the offense which is the subject of common design. See *People v. Cvetich* (1979), 73 Ill. App. 3d 580, 391 N.E.2d 1101 (guilt of burglary which led to arson supports conviction for arson under accountability theory).

Given common design, accountability may be proved by circumstantial evidence. (*People v. Stevens* (1981), 98 Ill. App. 3d 158, 423 N.E.2d 1340.) In its deliberations, the trier of fact is not compelled to accept the defendant's version of the facts of the offense and may consider the surrounding circumstances and the probability or improbability of the defendant's account. (*People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.) Herein defendant took the stand in his own defense. He acknowledged both his prior convictions and the fact that he lied to the police on the morning of the burglary and fire. We conclude that there was sufficient evidence from which the jury could infer defendant's guilt of arson under an accountability theory.

■ As to the defendant's withdrawal from the conduct which constituted the arson, it does not appear that he timely deprived his prior efforts of effectiveness or gave warning to the proper authorities. (*People v. Brown* (1962), 26 Ill. 2d 308, 186 N.E.2d 321 (withdrawal may not effectively be made from felony murder when transaction which begets it has actually been commenced); *People v. Lacey* (1964), 49 Ill. App. 2d 301, 200 N.E.2d 11 (nonparticipation in rape does not preclude conviction of that offense when defendant did not sufficiently oppose it).) There were many actions which the defendant could have taken. The fact finder could disbelieve defendant's testimony or consider his alleged comment to Turner a perfunctory effort, totally without effect, and not a "proper effort" so as to preclude his responsibility for the conduct which followed. (See *In re Weigler* (1976), 37 Ill. App. 3d 478, 346 N.E.2d 171; see generally 4 Wharton, Criminal Law sec. 734, at 555-57 (14th ed. 1981).) In this case, the defendant admits his part in the burglary and theft of the Pearre residence, as well as certain acts to prevent his detection or the recovery of the stolen items, and his expenditure of monies obtained by pawning the stolen items. He only claims withdrawal from his course of the common scheme for purposes of one act—the arson. We conclude there was sufficient evidence in the record from which the jury could conclude that the defendant had not sufficiently withdrawn from the course of conduct so as to preclude his connection with the arson under the accountability theory.

■ Defendant's third argument on appeal is that the trial court abused its discretion in sentencing him to the extended maximum

term for arson, 14 years, by failing to consider his youthful age and limited involvement in the arson—given that codefendant Turner was charged but not prosecuted for the arson. Defendant has filed a motion in this court to supplement the record on appeal with copies of the docket sheets, indictments and mittimus in the case of People v. Timothy L. Turner, Livingston County No. 83—CF—36. We hereby allow that motion in order to address the issue raised by the defendant.

Under section 5—5—3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a)) the trial court is required to weigh the harm caused by a defendant's conduct, as well as his history of delinquency or criminal activity, as factors in aggravation for purposes of fashioning the sentence appropriate to the cause. The trial judge is not, however, required to list for the record each and every reason for a particular sentence, nor is he required to assign a value to each fact presented as evidence of the sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) Defendant's birth date and criminal history were before the trial judge in the presentencing report—to which no corrections were made at the sentencing hearing—which the judge stated he had read. In mitigation, the defendant took the stand to deny his involvement in the arson and explain his criminal history. Although it is correct that the degree of activity or participation in a crime should receive attention in passing sentence (*People v. Morris* (1969), 43 Ill. 2d 124, 251 N.E.2d 202), the fact that the record contains no reference by the court to this matter may not be equated with its failure to consider this factor in sentencing. Similarly, the fact that the trial judge did not specifically comment upon the defendant's age is not indicative of the court's failure to consider this as a factor in determining sentence.

■■ With regard to defendant's sentence for the arson offense as grossly disparate from that of codefendant Turner, who was charged with but not prosecuted for the arson, we need only look to the record in this case and in that. Turner pleaded guilty to one count of residential burglary (theft) as part of a plea agreement under which the arson count was nol prossed. He was sentenced to 15 years' imprisonment for the residential burglary and a consecutive term of 5 years for an escape offense.

■■ Defendant's final argument is that the trial court abused its discretion in sentencing him by using damages caused by the arson to aggravate the sentence for both arson and residential burglary, thereby punishing him twice for the same offense in violation of the double jeopardy clause. Arson is a Class 2 felony for which the sen-

tencing range is not less than 3 nor more than 7 years' imprisonment and for which an extended term of not less than 7 years nor more than 14 years may be imposed. (Ill. Rev. Stat. 1981, ch. 38, pars. 20—1, 1005—8—1(a)(5), 1005—8—2(a)(4).) Residential burglary (theft) is a Class 1 felony with a sentencing range of not less than 4 nor more than 15 years' imprisonment. (Ill. Rev. Stat. 1981, ch. 38, pars. 19—3, 1005—8—1(a)(4).) Defendant was sentenced to *concurrent* terms of imprisonment.

In *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, our supreme court stated:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."

Applying this test to the facts before us, we observe that the offenses of residential burglary (theft) and arson are based on separate but related acts, each requiring proof of different elements. As sentences for both offenses were proper, we conclude that consideration of the damages resulting from the conduct comprising the offenses is likewise proper in determining the sentence appropriate to each offense-even though a portion of the damages may thus be considered toward the sentence in more than one offense. Section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2) requires such consideration when more than one offense arises from a series of incidental or closely related acts which are not included offenses.

■ Defendant urges that the trial court used the damages caused by the arson as the *sole* aggravating factor for both offenses, thereby punishing him twice for the same offense, and he cites as comparable the "double enhancement" cases of *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, and *People v. Meyer* (1982), 110 Ill. App. 3d 673, 442 N.E.2d 957. We do not consider the double enhancement

cases to be comparable to the case at bar. In *Meyer*, this court interpreted *People v. Hobbs* (1981), 86 Ill. 2d 242, 427 N.E.2d 558 (accord, *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627) as holding that a trial court could not use one prior conviction both to enhance a misdemeanor to a felony and to impose an extended term. Once a prior conviction has been used to turn a misdemeanor into a felony or impose an extended term, its usefulness for sentencing purposes is exhausted. Herein the defendant was sentenced for two separate but related offenses. The maximum extended term of 14 years was imposed on the arson conviction, a Class 2 felony, because of defendant's *two prior Class 2 felonies*, consistent with section 5—8—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2.) These prior felonies were used only once, to enhance the sentence for arson. No error.

Affirmed.

MILLER and WEBBER, JJ., concur.