No. 3-05-0757

Filed March 29, 2007.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois, |
|     Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05-CF-31 |
| ROBERT T. LUCAS, | ) ) | Honorable Scott A. Madson, |
|     Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the Opinion of the court:
_____

Defendant Robert T. Lucas was found guilty of driving while his license was revoked (DWLR) (625 ILCS 5/6-303(a), (d) (West 2004)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2004)) and armed violence (720 ILCS 5/33A-2(a) (West 2004)). The trial court sentenced him to 30 years in prison. On appeal, defendant argues that his conviction for armed violence should be vacated because (1) a conviction for enhanced DWLR cannot serve as a predicate felony for armed violence and (2) if enhanced DWLR can be used as a predicate felony, it must be proven to the jury beyond a reasonable doubt. Defendant also claims that his sentence should be vacated because it is (1) unconstitutional, (2)

an abuse of the court's discretion and (3) violates one-act, one-crime principles.  We affirm.

Defendant was charged by information with DWLR, unlawful use of a weapon by a felon and armed violence.  The indictment provided that defendant had a previous conviction for DWLR and that the prior revocation was based on a conviction for driving under the influence (DUI) (see 625 ILCS 5/11-501 (West 2004)).  The indictment further alleged that defendant, while armed with a switchblade knife, committed the offense of driving while his license was revoked.

At trial, Officer Gary Becket testified that on May 1, 2005, he was on patrol near downtown De Pue.  At approximately 12:30 a.m., he observed defendant's vehicle cross the center line two times.  Becket initiated his emergency lights and attempted to stop defendant's vehicle.  Defendant continued driving and pulled into the driveway of a residence.  He then exited the vehicle and started running toward the house.  Becket yelled at defendant to stop.  Defendant ran around the side of the house and disappeared inside.

Becket called for backup before attempting to remove defendant from the house. When other officers arrived, they entered the home and ordered defendant to come out of a locked bathroom.  The officers heard a toilet flush, and then defendant emerged from the bathroom.  After defendant was handcuffed, he asked for his

2

lighter. The officers searched the bathroom and found defendant's wallet, some cash, and a cigarette lighter in a pile on the sink. The lighter contained a spring-loaded switchblade knife. Both residents of the apartment testified that they had never seen the lighter before that night.

The State then introduced a certified record indicating that defendant's drivers' license was revoked on the date of his arrest. Following closing arguments, the jury returned a verdict of guilty on all three counts.

At sentencing, the trial court considered the presentencing investigation report. Defendant was forty-one and had been convicted of numerous offenses between 1981 and 1996, including carrying an uncased weapon, DUI, three felony convictions for possession of a controlled substance, resisting arrest, reckless driving, attempting to elude a police officer, leaving the scene of an accident, and theft. In 1997, defendant was charged with unlawful use of a weapon by a felon, aggravated battery of a peace officer, armed violence, DUI, reckless driving and aggravated fleeing from a police officer. Defendant was sentenced to a 12-year term and was released on parole in September 2002. In July of 2003, while still on parole, he was convicted of resisting a peace officer and domestic battery. He was returned to prison and was again released on parole in September of 2003. He was later found guilty of illegal transportation of alcohol and was on probation

when he was arrested for this offense.

Becket testified that upon arrest, defendant was slurring his speech and appeared to be impaired. He blew 0.00 on a Breathalyzer test. He refused to take a urine test. He also had $1,279 in cash when he was arrested. Jail Officer Jeremy Roush testified that after defendant's arrest, defendant told him that if he could get close enough to State's Attorney Patrick Herrmann, he would snap Herrmann's neck.

Officer Smith testified regarding a 1997 incident that lead to defendant's conviction for aggravated battery of an officer. Smith had stopped defendant for a traffic violation. During the stop, defendant leaned forward. Smith saw a handgun tucked in the back of defendant's waistband. Smith attempted to grab the gun. Defendant leaned back, trapped Smith's arm, and proceeded to drive away with Smith attached to the car. Smith was drug several feet and then released. Defendant was captured 24 miles later. During the chase, officers believed defendant was shooting at them. After the chase, police found a loaded handgun and several bags of drugs in defendant's vehicle. They also found numerous bags of cocaine strewn along the chase route. Defendant was convicted of armed violence, aggravated battery of a police officer, unlawful use of a weapon by a felon, driving under the influence, aggravated fleeing and eluding, and reckless driving.

In mitigation, several letters were submitted by defendant's

4

friends, family and church members. Defendant had obtained his GED and had a ten-year-old son. A local employer testified that defendant had done some work for him in the past and was able to complete the job as requested.

During arguments, the State presented a certified record which indicated that defendant's driver's license was revoked following a DUI conviction in 1983. Defendant was convicted of DWLR in 1987. His license was reinstated. It was again revoked in 1997 and was still revoked as of May 1, 2005.

The trial judge found that defendant had committed a Class 4 felony of DWLR. He sentenced defendant to concurrent terms of 30 years for armed violence and 5 years for unlawful use of a weapon by a felon.

ANALYSIS

I. Predicate Felony

Defendant contends that his conviction for armed violence must be vacated because a DWLR conviction, which has been increased to a Class 4 felony based on a prior conviction for DWLR, cannot be used as a predicate felony for an armed violence conviction. He claims that enhancement of DWLR from a misdemeanor to a felony is for sentencing purposes only and not as a predicate felony for an armed violence charge.

A person commits armed violence when, "while armed with a dangerous weapon, he commits any felony defined by Illinois Law,

5

except first degree murder, attempted first degree murder, intentional homicide of an unborn child, predatory criminal sexual assault of a child, aggravated criminal sexual assault, aggravated kidnaping, aggravated battery of a child, home invasion, armed robbery, or aggravated vehicular hijacking." 720 ILCS 5/33A-2(a) (West 2004). In addition to those felonies that have been exempted by the legislature, the Illinois supreme court, under certain circumstances, has limited the type of felonies contemplated by the "any felony" language of the armed violence statute. For example, the offenses of voluntary and involuntary manslaughter cannot serve as predicate felonies for an armed violence conviction because the legislature did not intend for the statute to apply to conduct that is not a deliberate or deterrable offense. People v. Alejos, 97 Ill. 2d 502 (1983); People v. Fernetti, 104 Ill. 2d 19 (1984). However, if the decision to use a weapon is not forced upon a defendant or is not the result of a spontaneous decision, then the defendant's conduct can be deterred and the purpose of the armed violence statute is satisfied. People v. Becker, 315 Ill. App. 3d 980 (2000).

Defendant's DWLR charge, which served as the predicate felony for the armed violence conviction, was for a violation of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/1-101 et seq. (West 2004)). The purpose of the DWLR statute is to punish those people who drive a motor vehicle at a time when their license is

6

suspended or revoked. The statute provides that "[a]ny person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license permit *** is revoked *** shall be guilty of a Class A misdemeanor." 625 ILCS 5/6-303(a) (West 2002). The statute further states that "[a]ny person convicted of a second violation of this [s]ection shall be guilty of a Class 4 felony *** if the revocation or suspension was for a violation of [s]ection 11-401 or 11-501 of this Code." 625 ILCS 5/6-303(d) (West 2004). Section 11-501 of the Code involves the offense of driving while under the influence of alcohol. See 625 ILCS 5/11-501 (West 2004).

The fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature. People v. Woodard, 175 Ill. 2d 435 (1997). Since the language used by the legislature is the best indication of legislative intent, courts look first to the words of the statute. Nottage v. Jeka, 172 Ill. 2d 386 (1996). When the language of the statute is plain and unambiguous, courts will not read in exceptions, limitations, or other conditions. People v. Daniels, 172 Ill. 2d 154 (1996).

Here, the plain language of section 6-303(a) and (d) of the Code states that any person convicted of a second violation of DWLR, when that person has been previously convicted of DWLR and the revocation was for DUI, "shall be guilty of a Class 4 felony." At trial, the State introduced a certified record from the

7

Secretary of State indicating that defendant's license was revoked. Evidence was also presented at sentencing demonstrating that defendant had a prior conviction for DWLR and that his license had been previously revoked for driving under the influence of alcohol. Thus, according to the statutory language of section 5/6-303(d), defendant was properly charged and convicted of a Class 4 felony for driving with a revoked license.

Defendant argues that felony DWLR should be exempt as a predicate offense for armed violence because such a felony does not further the statute's purpose. Defendant admits that DWLR is not an undeterrable offense but claims that using felony DWLR as a predicate felony would deter the carrying of weapons "in all instances for whatever purposes people wish to carry them." See Alejos, 97 Ill. 2d at 510. We disagree.

In Alejos, the court noted that the presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistence. Thus, the stiff punishment mandated by the armed violence statute "is intended not only to punish the criminal and protect society from him but also to deter his conduct-that of carrying the weapon while committing a felony." Alejos, 97 Ill. 2d at 509. Using DWLR as a predicate felony furthers that legislative purpose. Using DWLR as a predicate felony does not deter any person from carrying a weapon while driving, an otherwise legal activity. Using DWLR as a

8

predicate felony deters individuals from carrying a weapon while they are committing the felony of driving while their license is revoked. It is therefore a proper predicate offense for armed violence.

## II. Proof of Predicate Felony at Trial

Defendant claims that the State failed to prove beyond a reasonable doubt, as elements of his crimes, that his license was revoked for the grounds set forth in section 6-303(d) (625 ILCS 5/6-303(d) (West 2004)) and section 11-501(a) (625 ILCS 5/11-501(a) (West 2004)) of the Vehicle Code. Defendant maintains that to be convicted of a Class 4 felony DWLR, the State was required to prove beyond a reasonable doubt, as an element of the crime at trial, that the "enhancing" factors were present. The State claims that it was prevented from producing such evidence at trial under section 5/111-3(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c) (West 2004)).

Section 5/111-3(c) of the Code provides:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed

9

to the jury during trial \*\*\*.  For the purposes of this section, 'enhanced sentence' means a sentence which is increased by a prior conviction form one classification of offense to another higher level classification of offense set forth in Section 5-5-1 of the [Code] \*\*\*; it does not include an increase in the sentence applied within the same level of classification of offense."

This provision of the Code applies to those situations where the State intends to enhance the charge by raising the classification of the offense due to a prior conviction.  The language explicitly excludes situations where the sentence is increased because of a prior conviction but the classification of the offense remains the same.  People v. Contreras, 241 Ill. App. 3d 1023 (1993).

In this case, defendant was charged with and convicted of DWLR.  Due to his prior convictions for DWLR and DUI, section 5/6-303 (d)of the Vehicle Code mandated the elevation of the offense from a Class A misdemeanor to a higher-level classification, a Class 4 felony.  See 625 ILCS 5/6-303(d) (West 2004).  Because the prior conviction enhanced the "classification" of the offense, rather than just the sentence, section 5/111-3(c) applied.  Therefore, the State was prohibited from proving the prior commissions of DWLR and DUI as an element of the Class 4 felony DWLR.   People v. DiPace, 354 Ill. App. 3d 104 (2004); People v. Braman, 327 Ill. App. 3d 1091 (2002); People v. Bowman, 221 Ill.

10

App. 3d 663 (1991). Instead, the existence of the predicate offenses was properly used after defendant's conviction to increase the classification of his crime at sentencing. See People v. Thompson, 328 Ill. App. 3d 360 (2002); Bowman, 221 Ill. App. 3d 663 (State not required to show defendant's prior conviction, or the grounds for those prior convictions, until sentencing). Requiring the State to prove the grounds for a prior conviction or revocation beyond a reasonable doubt at an earlier stage in the proceedings would contravene the plain language of section 111-3(c) of the Code.

Defendant claims that section 5/111-3(c) only applies to the prosecution of the DWLR count, not the armed violence count. However, as acknowledged by defendant, accepting this argument produces an incongruous result. To simultaneously require the State to prove the defendant's prior conviction for purposes of the armed violence count, but prohibit it from proving the same facts for purposes of the DWLR count leads to an absurd outcome and frustrates the intent of the legislature. When interpreting a statute, we must presume the legislature did not intend to produce an absurd or unjust result. Andrews v. Kowa Printing Corp., 217 Ill.2d 101 (2005). This court will not read exceptions, conditions, or limitations into a statute which the legislature did not express if the statutory language is clear and unambiguous. Village of Chatham v. County of Sangamon, 216 Ill.2d 402 (2005).

11

The statutory language of section 5/111-3(c) is clear and does not impose any limitations or exceptions as to its application.

In this case, the evidence demonstrated that defendant carried a weapon while driving a vehicle illegally. When the officer attempted to stop him, defendant purposefully evaded him and attempted to hide in a nearby house. These acts were deliberate. Had the officer tried to arrest defendant for driving with a revoked license without assistance, the consequences could have been deadly. Under the facts of this case, we decline to find a legislative intent to exclude felony DWLR as a predicate felony for an armed violence charge.

We are mindful of the apparent difficulty created by the statute under the circumstances of this case. However, nothing in its language convinces us that the legislature intended to carve out an exception which would require the State to prove to the jury a prior convictions when that prior conviction is the basis for a predicate felony in an armed violence case.

### III. Proportionate Penalties Clause

Defendant next claims that his sentence violated the proportionate penalties clause of the Illinois constitution (Ill. Const. 1970, art. I, §11). Defendant contends that his 30-year sentence for armed violence is so wholly disproportionate to the severity of his conduct that it shocks the conscience of the community.

12

Generally, it is within the legislature's discretion to determine the appropriate penalties for various offenses, and courts of review are hesitant to override the legislature's exercise of discretion. People v. Gonzalez, 25 Ill. 2d 235 (1962). A statute is presumptively constitutional. People v. Sharpe, 216 Ill. 2d 481 (2005). The party challenging the statute has the burden of proving that a constitutional violation has occurred. Sharpe, 216 Ill. 2d 481. We review the question of whether a statute is constitutional de novo. Sharpe, 216 Ill. 2d 481.

The proportionate penalties clause of the Illinois constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11. A statute violates the proportionate penalties clause if the punishment for a particular offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. People v. Miller, 202 Ill. 2d 328 (2002). Courts are reluctant to invalidate penalties because the legislature is more capable of measuring the seriousness of offenses. People v. Butler, 304 Ill. App. 3d 750 (1999).

It is well settled that in setting the penalty for armed violence the legislature acts within its discretion in focusing on the use of the weapon rather than the character of the underlying

13

felony. <u>People v. Lombardi</u>, 184 Ill. 2d 462 (1998). Our legislature enacted the armed violence statute "to respond emphatically to the growing incidence of violent crime." <u>Alejos</u>, 97 Ill. 2d at 507-08. The chances that violence will ensue and cause great bodily harm because of the weapon are increased when a felony is committed. <u>Alejos</u>, 97 Ill. 2d 502.

Defendant was convicted of a Class 4 felony which would generally make him eligible for a sentence of one to three years. See 730 ILCS 5/5-8-1(a)(7) (West 2004). Since defendant was carrying a switchblade knife, he was convicted of a Class X felony which carried a sentencing range of 10 to 30 years in prison, plus enhancement to 60 years. 720 ILCS 5/33A-3(a-5) (West 2004); 730 ILCS 5/5-8-1(a)(3), 5/5-8-2(a)(2) (West 2004). Even though the penalties for the offense with which defendant was charged is substantially increased by the armed violence statute, we find no constitutional violation. The presence of a weapon enhances the danger of any felony. It is well settled that the penalty provisions of the armed violence statute are reasonably designed to remedy that legislative concern. <u>Lombardi</u>, 184 Ill. 2d 462. Thus, defendant's sentence for armed violence did not contravene the proportionate penalties clause simply because the predicate felony offense fell into the lowest felony classification. See <u>Lombardi</u>, 184 Ill. 2d 462 (rejecting defendant's argument that armed violence for committing Class 4 felony while armed with a firearm which

14

required sentence of 15 to 30 years was disproportionate); People v. Green, 301 Ill. App. 3d 767 (1998) (holding that penalty for the predicate Class 4 felony of possessing a controlled substance did not restrict legislature's authority to impose a severe penalty upon conviction of felony while armed.)

Defendant chose to drive a vehicle with a revoked license. He did so knowing that he had a prior conviction for DWLR. His conduct was then exacerbated by his decision to carry a weapon during its commission. When any police officer approaches a vehicle there exists a recognized risk. Pennsylvania v. Mimms, 434 U.S. 106 (1977). When officer Becket attempted to initiate the stop, defendant fled into a house that was occupied. The possible consequences to the officers involved or the residents of the home if defendant had decided to employ the deadly weapon are unquestionable.

Imposition of a 30-year sentence, a stringent penalty considered by the legislature as necessary to achieve the objective of discouraging persons from carrying weapons while committing a felony, reflects the seriousness of the offense. Lombardi, 184 Ill. 2d 462. There is no guarantee of the proportionality or equality between a crime and the length of a sentence. People v. Farmer, 165 Ill. 2d 194 (1995); Brown, 362 Ill. App. 3d 374. Defendant's sentence may be harsh, but it is not cruel, degrading, or so grossly disproportionate to the seriousness of the offense as

15

to shock the moral sense of the community.

IV. Excessive Sentence

Defendant alleges that his sentence was excessive in that it was manifestly disproportionate to the nature of the offense. Defendant argues that the trial court abused its discretion in sentencing him based on the reasoning in People v Stacey, 193 Ill. 2d 203 (2000).

Armed violence is a Class X felony. 720 ILCS 5/33A-3(a-5)(West 2004). The sentencing range for a Class X felony conviction is 10 to 30 years. 720 ILCS 5/33A-3(a-5) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004). If the defendant has prior felony convictions, he is eligible for an extended term sentence of up to 60 years for the offense. 730 ILCS 5/5-8-2(a)(2) (West 2004).

The trial judge's sentencing decision is entitled to great deference because the court is in a better position than the reviewing court to determine the appropriate sentence and to balance the need to protect society with the rehabilitation of the defendant. People v. Stacey, 193 Ill. 2d 203 (2000); People v. Spencer, 303 Ill. App. 3d 861 (1999). The sentencing judge has the opportunity to weigh the defendant's credibility, his demeanor and general character, as well as his mentality capacity, social environment, habits and age. People v. Streit, 142 Ill. 2d 13 (1991); People v. Perruquet, 68 Ill. 2d 149 (1977). A trial

16

court's determination will not be reversed absent an abuse of discretion. Streit, 142 Ill. 2d 13. A sentence that falls within the statutory range is not an abuse of discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Stacey, 193 Ill. 2d 203.

Our review of the record reveals that the trial court properly considered the aggravating and mitigating evidence, the arguments of counsel, and the presentencing report. The court noted defendant's prior and extensive criminal record, which included seven felony convictions; one for armed violence, one for aggravated battery of a police officer and three for possession of a controlled substance. The court also considered the circumstances surrounding this incident, defendant's attempt to flee the officer, his lack of contribution to society and the dismal possibility of his rehabilitation. The trial court sentenced defendant to 30 years of imprisonment, stating that such a term was necessary to "protect society from the defendant."

While defendant's sentence is severe, it is within the 10-to-60 year range he faced for armed violence. 720 ILCS 5/33A-3(a-5) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004); 730 ILCS 5/5-8-2 (a)(2) (West 2004). Unlike the defendant in Stacey, defendant was convicted of a violent crime for using a deadly weapon. See Stacey, 193 Ill. 2d 203 (although sexual abuse crimes were

17

appalling and reprehensible, imposition of consecutive 25-year terms was manifestly disproportionate since there was no threat of bodily harm to victims.)  The crime in this case involved defendant's possession of a switchblade knife.  During the course of his arrest, defendant attempted to flee from police.  At the very least, a threat of bodily harm did exist.  Defendant's sentence is neither greatly at variance with the spirit and purpose of the law, nor is it manifestly disproportionate to the nature of the offense.  Stacey, 193 Ill. 2d 203; Brown, 362 Ill. App. 3d 374. Accordingly, we reject defendant's argument that his sentence was an abuse of the court's discretion.

## V.  One-Act, One-Crime

Last, defendant claims that his conviction for unlawful possession of a weapon by a felon must be vacated based on one-act, one-crime principles because the State proved only one act of possession of the knife.

Under the one-act, one-crime rule, a court must first consider whether a defendant's conduct consisted of separate acts or a single physical act.  People v. Rodriguez, 169 Ill. 2d 183 (1996). Multiple convictions are improper if they are based on the same act.  Rodriguez, 169 Ill. 2d 183.  If the defendant committed multiple acts, then the court must determine whether any of the offenses are lesser included offenses.  DiPace, 354 Ill. App. 3d 104.  An act is any overt or outward manifestation which will

18

support different offenses. Rodriguez, 169 Ill. 2d 183. A person can be guilty of two offenses when a common act is part of both crimes. DiPace, 354 Ill. App. 3d 104.

Defendant's only argument on appeal is that the defendant committed a single act of possession of the switchblade knife. We disagree. In this case, both of defendant's convictions are supported by a separate physical act. Though possessing the knife was involved in both crimes, each of his convictions was due to a separate offense based on separate conduct. See DiPace, 354 Ill. App. 3d at 116. The defendant was charged with unlawful possession of a weapon by a felon for knowingly possessing a switchblade knife. The armed violence charge alleged that he, while armed with the switchblade, committed the offense of driving while his license was revoked. The evidence at trial demonstrated that he was the only occupant of the vehicle when he attempted to elude Officer Becket. Defendant then locked himself in a bathroom of the residence where officer discovered a lighter. During his arrest, defendant asked for the lighter. The lighter contained the switchblade knife.

Defendant was convicted of unlawful possession of a weapon by a felony for possessing the knife while in the residence. He was also convicted of armed violence for possessing the weapon in his car while he drove that vehicle with a revoked license. The evidence establishes that defendant possessed a knife at a time

other than when he was driving the car. Those two separate acts of possession support both convictions. Accordingly, defendant's convictions and sentences for unlawful possession of a weapon by a felon and armed violence must stand.

CONCLUSION

The judgment of the circuit court of Bureau County is affirmed.

Affirmed.

SCHMIDT, J., concurs.

JUSTICE McDADE, dissenting:

The majority has held that a conviction for enhanced driving while license revoked (DWLR) can serve as the predicate felony for a conviction for armed violence and that the State proved defendant guilty of armed violence on that basis. I believe that decision to be wrong and, therefore, dissent.

Although I would thus not reach defendant's other two issues, I will discuss them because the majority has done so. Therefore, assuming, solely for purposes of argument and without conceding the point, that the majority's decision on the first two issues is correct, I would concur with the holding that defendant's convictions for armed violence and for unlawful use of a weapon would not, if properly reached, violate the one-act, one-crime rule and would agree that the conviction for unlawful use of a weapon should be affirmed. Subject to the same assumption, I would

20

dissent from the majority's conclusion that defendant's 30-year sentence for armed violence does not violate the proportionate penalties clause of the Illinois constitution or constitute an abuse of discretion.

I.  Predicate Felony and

II.     Proof of Predicate Felony at Trial

Defendant admits that he drove while his license was revoked, and that the State had revoked his license as a result of his conviction for driving under the influence (DUI).  DWLR is normally a Class A misdemeanor.  625 ILCS 5/6-303(a) (West 2004).  Because defendant's second conviction for DWLR was based on a prior revocation for driving under the influence, however, section 6-303(d) of the Illinois Vehicle Code required the court to sentence defendant as if he had committed a Class 4 felony.  Section 6-303(d) reads, in pertinent part, as follows:

> "Any person convicted of a second violation of
> this Section shall be guilty of a Class 4
> felony ***, if the revocation or suspension
> was for a violation of Section 11-401 or 11-
> 501 of this Code, or a similar out-of-state
> offense, or a similar provision of a local
> ordinance, a violation of Section 9-3 of the
> Criminal Code of 1961, relating to the offense
> of reckless homicide, or a similar out-of-

21

state offense, or a statutory summary suspension under Section 11-501.1 of this Code [625 ILCS 5/11-501.1]." 625 ILCS 5/6-303(d) (West 2004).

However, under section 5/111-3(c) of the Code of Criminal Procedure (725 ILCS 5/111-3(c) (West 2004)), the State could not disclose to the jury the fact of defendant's prior conviction nor its intention to seek an enhanced sentence. Section 111-3(c) reads, in pertinent part, as follows:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level

22

classification of offense set forth in Section 5-5-1 of the 'Unified Code of Corrections', *** it does not include an increase in the sentence applied within the same level of classification of offense."  725 ILCS 5/111-3(c) (West 2004).

Defendant argues that enhanced DWLR cannot serve as a predicate felony for armed violence because the offense is not actually a Class 4 felony, it is a Class A misdemeanor with an enhanced sentencing provision.  For this reason, defendant also asserts that any misdemeanors that carry enhanced sentencing provisions may never serve as the predicate offense for armed violence.  Alternatively, defendant argues the State failed to prove him guilty of armed violence because it failed to prove an element of that offense.  Specifically, that defendant committed a felony.  Defendant argues the State never proved he committed a felony (enhanced DWLR--assuming it is in fact a Class 4 felony and not merely a misdemeanor sentenced as one) because it never submitted evidence at trial of the reason for his prior revocation--a fact necessary to make his offense a felony.  Therefore, defendant asserts, the State only proved him guilty of committing a Class A misdemeanor (DWLR) while armed.

The State responds the statute clearly states that "[a]ny person convicted of a second violation of this Section shall be

*guilty* of a Class 4 felony ***." (Emphasis added.) The State also argues that "enhanced sentence" as used in section 111-3(c) does not really mean an "enhanced sentence" but actually means that the classification of the subsequent offense is higher--in this case from a Class A misdemeanor to a Class 4 felony. Finally, the State argues that even if section 6-303(d) contains only an enhanced sentencing provision and does not make the subsequent offense itself a felony, the subsequent offense may be treated as a felony for purposes of the armed violence statute. For this proposition the State analogizes attempt offenses and claims that "courts have consistently held that an attempt offense that is not classified as a felony may be treated as a felony and serve as the predicate felony for an armed violence conviction where the attempt offense is punishable as a felony."

Based on its claim that enhanced DWLR is a Class 4 felony and not merely a Class A misdemeanor with a sentencing provision for repeat offenders, the State argues it proved defendant guilty of that offense beyond a reasonable doubt. The State argues it was not required to prove the reason for his prior revocation to the jury because that is not an element of the offense of enhanced DWLR. The State points out that "[section] 5/111-3(c) specifically states that when the People seek an enhanced sentence because of a prior conviction, that prior conviction is not an element of the offense. It is for this reason that the pattern jury instructions

24

do not have a separate definition or issues instruction for the felony of driving while license revoked."[1]

"The offense of attempt is not classified under the Unified Code of Corrections as either a felony or a misdemeanor." *People ex rel. Carey v. Scotillo*, 84 Ill. 2d 170, 173, 417 N.E.2d 1356, 1358 (1981). The court has held that although attempt is classified as neither a misdemeanor or a felony, "where an attempt offense is *punishable* as a felony such an offense may be treated as a felony for purposes of the armed violence statute." (Emphasis in original.) *People v. Goodman*, 109 Ill. App. 3d 203, 209, 440 N.E.2d 345, 349 (1982), citing *People v. Gibson*, 99 Ill. App. 3d 1068, 425 N.E.2d 1208 (1981). In *Gibson*, the court held that an "armed violence verdict could properly be based on the underlying felony of attempt murder." *Gibson*, 99 Ill. App. 3d at 1072, 425 N.E.2d at 1212. The *Gibson* court also stated that attempt murder is a Class X felony, but section 8-4 of the Criminal Code states that "the *sentence* for attempt to commit first degree murder is the *sentence* for a Class X felony." (Emphases added.) 720 ILCS 5/8-4(c)(1) (West 2004).

I believe this court should find that the *Goodman* court erroneously expanded the holding in *Gibson* and, therefore, the rationale permitting attempt murder, which is not actually

---

[1] It is, of course, possible that the instruction does not exist because the crime--this so-called enhanced DWLR, a Class 4 felony--does not exist.

classified as a felony, to serve as the predicate felony for armed violence, is not applicable to DWLR.  First, *Gibson*'s explicit statement that attempt murder *is* a Class X felony indicates the court's belief that the legislature had in fact classified the offense of attempt murder as a felony.  Therefore, the *Gibson* court did not apparently address or resolve whether an offense that was not a felony (but is sentenced as one) could serve as the predicate offense for armed violence.  Certainly, *Gibson* did not resolve that issue.

Second, *Gibson* was concerned with whether the defendant's conviction for armed violence resulted from the double enhancement the supreme court found impermissible in *People v. Haron*, 85 Ill. 2d 261, 422 N.E.2d 627 (1981).  There, the court held that a defendant cannot be convicted of armed violence predicated on an offense that was not a felony before it was enhanced by the use of a deadly weapon[2].  Therefore, in *Gibson*, the defendant's conviction for armed violence could not stand if it was based on the underlying felony of aggravated battery[3].  However, in *Gibson*, the

---

[2]  For its proposition that attempt may serve as the predicate felony for armed violence, the State cites only one case from our supreme court, *People v. DelPercia*, 105 Ill. 2d 372, 475 N.E.2d 528 (1985).  That case, however, merely resolves a conflict in the appellate court over the interpretation of *Haron*.  As noted, the issue in *Haron* is distinct from the question defendant raises here.

[3]  "Battery is a Class A misdemeanor."  720 ILCS 5/12-3(b) (West 2004).  "In committing a battery, a person commits aggravated battery if he or she:  (1) Uses a deadly weapon other than by the discharge of a firearm."  720 ILCS 5/12-4(b)(1) (West 2004).  "[A]ggravated battery is a Class 3 felony."  720 ILCS 5/12-4(e)(1) (West 2004).

State had also charged the defendant with attempt murder. The jury in *Gibson* found the defendant guilty of armed violence without specifying the felony on which it based its finding of guilt. The court, which apparently believed attempt murder was a Class X felony, held the defendant's conviction for armed violence could stand because "a general finding of guilty is presumed to be based upon any good count in the indictment to which the proof is applicable." *Gibson*, 99 Ill. App. 3d at 1072, 425 N.E.2d at 1212. Regardless, *Gibson* did not address the question of whether an offense that is merely sentenced as a felony could serve as the predicate felony for armed violence in reaching its decision on the issue actually presented; and it provides no basis for *Goodman*'s stated conclusion that it did.

Despite the language of section 6-303(d), which reads that persons to whom it applies "shall be *guilty* of a Class 4 felony" (emphasis added), the court has held that "[t]he existence of these predicate offenses is used *after* a defendant's conviction [for DWLR (a Class A misdemeanor)] to increase the classification of his crime *at sentencing*." (Emphases added.) *People v. DiPace*, 354 Ill. App. 3d 104, 114, 818 N.E.2d 774, 784 (2004). Indeed, the State need not prove at trial the fact that would make defendant guilty of a Class 4 felony--the reason for his prior revocation-- for defendant to be sentenced for a Class 4 felony. See *People v. DiPace*, 354 Ill. App. 3d at 114, 818 N.E.2d at 784 ("the State need

27

not prove prior commissions of *** driving while license revoked as an element of Class 4 felony driving while license revoked"). See also *People v. Braman*, 327 Ill. App. 3d 1091, 1094, 765 N.E.2d 500, 503 (2002) ("the aggravated DUI terminology used in the DUI statute simply refers to an aggravated or enhanced sentence for a third or subsequent DUI. Section 501(d)(1)(A) of the Vehicle Code is clearly a recidivist sentencing statute for repeat DUI offenders") . Section 501(d)(1) is an identical sentencing scheme to that found in section 6-303(d). See, *e.g.*, *DiPace*, 354 Ill. App. 3d at 114, 818 N.E.2d at 784.

If section 6-303(d) created a separate offense--felony DWLR-its elements would be (1) driving on a revoked driver's license (2) having previously been revoked for, *inter alia*, DUI. "[T]he State has the burden of proving every element of the crime beyond a reasonable doubt." *People v. Churchill*, 80 Ill. App. 3d 405, 410, 399 N.E.2d 985, 988 (1980). The State is prohibited from satisfying its burden by section 111-3(c). Moreover, in *Almendarez-Torres v. United States*, 523 U.S. 224, 226, 140 L. Ed. 2d 350, 357, 118 S. Ct. 1219, 1222 (1998), the United States Supreme Court addressed whether a similar sentencing provision[4]

---

[4] "Subsection (a) of 8 U.S.C. § 1326 *** forbids an alien who once was deported to return to the United States without special permission, and it authorizes a prison term of up to, but no more than, two years. Subsection (b)(2) of the same section authorizes a prison term of up to, but no more than, 20 years for 'any alien described' in subsection (a), if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony.' § 1326(b)(2)." *Almendarez-Torres*, 523 U.S. at 226, 140 L. Ed. 2d at 357, 118 S. Ct. at 1222.

"defines a separate crime or simply authorizes an enhanced penalty." The Court held "that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime." *Almendarez-Torres*, 523 U.S. at 226, 140 L. Ed. 2d at 357, 118 S. Ct. at 1222.

In the present case, we should hold that the State did not prove defendant guilty of felony DWLR because section 6-303(d) creates no such offense. Thus, it appears defendant was not found guilty of committing a Class 4 felony but the court could, properly, sentence him as if he committed one. Because so-called "felony DWLR" served as the sole predicate offense for armed violence in this case, we should also hold that the State failed to prove an element of the offense of armed violence. That is, the State failed to prove defendant committed a felony. Accordingly, defendant's conviction for armed violence should be reversed outright. See *People v. Coulson*, 13 Ill. 2d 290, 298, 149 N.E.2d 96, 100 (1958) ("Since there is nothing in the record to indicate that any *** evidence will be available to the People upon remandment for a new trial, we reverse the judgment of conviction without remand"). Moreover, because of the restriction section 111-3(c) places on the State, we should further find that misdemeanors subject to enhanced felony sentencing may never serve

29

as the predicate offense for armed violence.

Because we have done none of those things, I respectfully dissent on this issue.

III. <u>Applicability of Proportionate Penalties Clause and Abuse of Discretion to Defendant's 30-year Sentence.</u>

The majority, having found that DWLR can serve as the predicate felony for armed violence, rejects defendant's federal constitutional challenge that his 30-year sentence for driving while his license was revoked was grossly disproportionate to the seriousness of his offense and his state constitutional challenge to his sentence as violative of the proportionate penalties clause. Conviction of a Class 4 felony would result in a maximum sentence of three years. Because he had a switchblade knife in his possession, he became eligible for a sentence between 10 and 60 years. The trial court considered defendant's criminal history and determined that a sentence of 30 years was appropriate for his offense.

a) Proportionate penalties

Defendant argues that sentencing his conduct as a Class X felony with a minimum sentence of ten years' imprisonment violates the proportionate penalties clause because it "is so wholly disproportionate to the severity of the conduct as to shock the conscience of the community." See *People v. Sharpe*, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 498 (2005) ("[A] penalty violates the

proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community"). He observes that the purpose of the armed violence statute is to "deter felons from using dangerous weapons, thereby minimizing the deadly consequences which may result when a felony victim resists." *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000).

Defendant argues that his offense, driving a car, without a license, while carrying a spring-loaded knife, is wholly disproportionate to the penalties for a Class X felony. Defendant asserts that the presence of a weapon does not make driving without a license more likely to result in death or bodily harm. Therefore, he argues, predicating armed violence on DWLR does not serve the armed violence statute's purpose. In response, the State contends that the focus in determining the severity of the offense should be on the use of a weapon and not the character of the underlying felony. That is, "the penalty for the predicate felony [does] not restrict the legislature's authority to impose a severe penalty ***."

That argument ignores *Smith*'s statement of statutory purpose and assumes that misdemeanor conduct somehow takes on the threatening characteristics of felonious behavior simply because of a repeat offense. Because the essence of his offense is a misdemeanor enhanced to an entry level felony only because it is

31

his second such offense, and because DWLR is essentially a victimless crime, this stated purpose of the statute is not served by treating the defendant as a felon. The basic *character* of the conduct remains a misdemeanor and a 30 year sentence is grossly disproportionate.

In *People v. Green*, 301 Ill. App. 3d 767, 772, 704 N.E.2d 437, 440 (1998), cited by the State, the court "reject[ed] defendant's argument that the penalty for the predicate felony--here, a maximum of three years in prison with the possibility of probation--should somehow restrict the legislature's authority to impose severe penalties upon conviction of that same Class 4 felony when the offender is carrying a gun." The State's reliance on *Green* reflects its mischaracterization of defendant's argument. Defendant does not argue that sentencing him for a Class X felony is disproportionate because the underlying offense is only a Class 4 felony--or even because it is a Class A misdemeanor. Defendant argues his penalty is disproportionate to the actual underlying conduct--merely driving an automobile without a valid license while in possession of a knife--and that the penalty is disproportionate because his core conduct was not made more dangerous by the presence of a weapon--the evil the armed violence statute is meant to address.

The penalty imposed by a statute is determined by its purpose. See *People v. Moss*, 206 Ill. 2d 503, 523, 795 N.E.2d 208, 221

32

(2003) ("where statutes are enacted for different purposes, we presume that the legislature considered different factors in establishing the respective punishments"). "The penalty contained in the armed violence statute is *** designed to achieve the legislature's goal of deterring individuals from arming themselves with dangerous weapons during the commission of a felony." *People v. Lombardi*, 184 Ill. 2d 462, 471-72, 705 N.E.2d 91, 96-97 (1998), *overruled on other grounds*, *People v. Sharpe*, 216 Ill. 2d 481, 519, 839 N.E.2d 492, 515-516 (2005)). Even assuming defendant was committing a felony when he drove his car without a license, the armed violence statute would not cause defendant to contemplate that he "better not do so while armed." *Cf. Green*, 301 Ill. App. 3d at 772, 704 N.E.2d 440. Unlike other felonies, defendant's crime had no victim, thus the risk of "deadly consequences [should] a felony victim resist[]" was not present in this case. Nor would defendant be "forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force" in this situation. Thus "the deterrent purpose of the armed violence statute" is not present in this case. See *People v. Condon*, 148 Ill. 2d 96, 110, 592 N.E.2d 951, 958 (1992).

If a conviction for a particular offense (in this case armed violence predicated on DWLR) does not serve the purpose of the statute, then the penalty as determined by the purpose of the statute is disproportionate to the offense because the penalty and the offense do not share the intended relation. The armed violence statute is meant to address the potential for escalation to violence during the commission of a felony that the presence of a weapon creates. That potential is simply not present here. Despite the State's reliance on the "long recognized *** risk to police officer[s] approaching an individual seated in an automobile," nothing here suggests that defendant ever posed such a threat to police or the public. The presence of a weapon in this case did not exacerbate

33

defendant's offense of driving without a valid license.

Because I believe defendant's sentence violates the Proportionate Penalties clause, I respectfully dissent on this issue.

b) Abuse of discretion

Defendant argues that the trial court abused its discretion in sentencing him to the maximum non-extended term sentence for armed violence, 30 years' imprisonment. In response, the State recounts defendant's criminal history and points out that the trial court also noted that at sentencing the defense focused on the nature and circumstances of the instant offense rather than defendant's history and character. The State argues defendant's sentence was appropriate based on that history. Defendant's criminal history is a relevant factor in fashioning his sentence. *People v. Curtis*, 126 Ill. App. 3d 568, 575, 467 N.E.2d 624, 630 (1984). However, "[u]nder section 5-5-3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat.1981, ch. 38, par. 1005-5-3.2(a)) the trial court is required to weigh the harm caused by a defendant's conduct, as well as his history of delinquency or criminal activity, as factors in aggravation for purposes of fashioning the sentence appropriate to the cause." *Curtis*, 126 Ill. App. 3d at 575, 467 N.E.2d at 630.

Defendant cites *People v. Stacey*, 193 Ill. 2d 203, 737 N.E.2d 626 (2000), for the proposition that the appellate court may find an abuse of discretion and reduce a sentence where the sentence is disproportionate to the severity of the offense. The *Stacey* court found that the defendant's conduct was "not severe enough to warrant 25-year sentence[s] *** [g]iven the nature of the crimes ***." The court noted that it was "not reweighing any aggravating or mitigating factors" but that its holding was based on "our constitution's mandate that penalties be determined according to the seriousness of the offense. Ill. Const. 1970, art. I, § 11." *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.

Defendant did not ask this court to reweigh sentencing factors. Instead, he asked us to evaluate his sentence in light of the severity of his conduct. *Stacey* instructs that just such a review is appropriate. Because I disagree with the majority's evaluation, I dissent on this issue as well.

Turning to my own examination of defendant's sentence in light of the severity of his conduct, I would conclude that defendant's behavior was not severe enough to warrant a 30-year sentence. The maximum sentence permitted by the armed violence statute is 30 years' imprisonment. 720 ILCS 5/33A-3(a-5) (West 2004); 730 ILCS 5/5-8-1(3) (West 2004). As previously discussed, the armed violence statute is meant "not only to punish the criminal and protect society from him but also to deter his conduct-that of carrying the weapon while committing a felony" due to the "belief that the chances that violence will erupt and cause great bodily harm because of the weapon are increased when a felony is committed." *People v. Alejos*, 97 Ill. 2d at 509 455 N.E.2d at 51.

There was little chance violence would erupt from defendant's behavior because he was merely driving his car. Admittedly, defendant fled police, but on foot. Defendant's flight while possessed of a weapon posed no serious threat. Nor did his driving. Further, whatever risk of harm defendant may have created was minimal given the weapon at issue, especially when compared with the potential for harm created by, for example, a handgun. *Cf. People v. Brown*, 362 Ill. App. 3d 374, 384, 839 N.E.2d 596, 605 (2005) ("If ever there was a felony offense during which the use of a deadly weapon should be deterred, it is a *high-speed flight* from or attempt to elude police. The possible consequences to the peace officers involved, and to any citizens unlucky enough to be nearby, if defendant decided to employ that deadly weapon, *especially a firearm*, are unquestionable") (emphases added).

Defendant later surrendered to police after disarming himself. At no time did the commission of a felony, possession of a knife, and arrest by police coincide to create a danger that violence would erupt and cause great bodily harm. In this case, excluding extended-term sentencing, it seems defendant received the same sentence he would have had he been armed with a gun. Defendant's conduct did not place him in a position to make a spontaneous decision to kill or create a risk of harm should a victim resist. Sentencing him to the maximum penalty possible under the armed violence statute is therefore "greatly at variance with the spirit and purpose of the law." Moreover, defendant was armed with a knife and disarmed himself before surrendering to police.

Because the maximum sentence defendant received is "manifestly disproportionate to the nature of the offense" I respectfully dissent on this issue as well.

Accordingly, for all of the foregoing reasons, I would reverse.